IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ROBERT DOUGLAS LYLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:15-cv-0480 |
| ) | Judge Sharp / Knowles |
| MONTGOMERY COUNTY JAIL and ) | |
| JAIL MAINTENANCE,[1] ) | |
| ) | |
| Defendant. ) | |

# REPORT AND RECOMMENDATION

This matter is before the Court upon Defendant's Motion for Summary Judgment. Docket No. 16. Along with its Motion, Defendant has filed a supporting Memorandum of Law (Docket No. 17), a Statement of Undisputed Material Facts (Docket No. 18), and the Affidavit of Douglas Tackett (Docket No. 20).

Plaintiff has not responded to Defendant's Motion or Statement of Undisputed Material Facts, nor has he filed his own Statement of Undisputed Material Facts.

Plaintiff originally filed this pro se, in forma pauperis action pursuant to 42 U.S.C. § 1983, alleging that Defendant violated his Eighth Amendment rights as follows:

> We don't have any rest room when we are on rec. We have to be lock-down to use rest room inside our cells and have to stay inside our cell until next check and we have no way to obtain water on rec. There are no tabels [sic] so we must eat and must sit on floor,

---

[1] Plaintiff's claims against "Jail Maintenance" were dismissed in an Order entered by Judge Sharp on April 28, 2015. Docket Nos. 3, 4. As Judge Sharp noted, the proper Defendant in this action is actually Montgomery County, Tennessee, not "Montgomery County Jail and Jail Maintenance" as was named. *Id.* Accordingly, the instant Motion is filed by Montgomery County, Tennessee.

> There [*sic*] is green mold growing in the sinks and in the showers, The ventalation [*sic*] system is clogged up, There [*sic*] are cells with no sprinklas [*sic*] heads in case of fire, There [*sic*] is no emergarcy [*sic*] call buttons to alert the officers of emergarcy [*sic*], Female gaurds [*sic*] watch male inmate's [*sic*] take showers, There's "spiders" [*sic*] infesting in the jail and in the cells that I was moved out of.

Docket No. 1.

Plaintiff sought the following relief: (1) "Private inspection / Investiggation" [*sic*]; (2) "Have Tabels [*sic*] placed in each cell so inmates have a place to sit and eat"; (3) "Have Emergarcy [*sic*] call buttons in each cell or each Pod"; (4) "Have where inmates can use rest room at any time"; (5) "Have a gaurd place [*sic*] in each Pod that way we can use rest room any time"; (6) "Have where female gaurd's [*sic*] can't watch male inmates shower"; and (7) "Have Jail Spray for spiders every week." *Id.*

On April 28, 2015, Judge Sharp dismissed all of Plaintiff's claims except for his claim related to female guards being able to see male inmates while they are showering. *See* Docket Nos. 3, 4. Accordingly, that is the only claim remaining in this action.

Defendant filed the instant Motion and supporting materials arguing that it is entitled to summary judgment because: (1) Plaintiff never filed a grievance related to female guards being able to see male inmates while they are showering; (2) Plaintiff's has not alleged facts demonstrating that his constitutional rights were violated; and (3) Plaintiff's Complaint fails to identify or allege an official Montgomery County policy, practice, or custom that violated his constitutional rights. Docket No. 17.

For the reasons set forth below, the undersigned recommends that Defendant's Motion for Summary Judgment (Docket No. 16) be GRANTED.

## II. Undisputed Facts[2]

### A. Relevant Allegations of Plaintiff's Verified Complaint

As pertains to Plaintiff's sole remaining claim, Plaintiff asserts that female guards watch male inmates shower. Docket No. 1.

### B. Affidavit of Douglas Tackett

The Montgomery County Jail ("Jail") is a 736 bed pre-trial detention facility, built in 2004. Docket No. 20, Affidavit of Douglas Tackett ("Tackett Aff."), ¶ 2. The Jail was constructed in accordance with the standards set by the American Corrections Association ("ACA"), and was constructed by an Architect certified with the American Institute of Architects ("AIA"). *Id.*, ¶ 3. The Jail meets the minimum standards for the physical plant of Jail Facilities as set forth by the Tennessee Corrections Institute ("TCI"), has always been recommended for certification by the TCI, and has continuously maintained its certification by the TCI that it has complied with the Tennessee minimum standards for local correctional facilities. *Id.*, ¶¶ 2, 3.

Plaintiff was incarcerated at the Jail from January 12, 2015 until May 25, 2015, when he was furloughed from the Jail to attend a rehabilitation facility. *Id.*, ¶ 4. Plaintiff was returned to the control and custody of the Jail following the rehabilitation treatment. *Id.*

No inmate at the Jail is subjected to regular surveillance by deputies of the opposite sex while naked and it is not the policy or the procedure of the Jail to require male inmates to shower under close or extended surveillance of female deputies. *Id.*, ¶ 5.

The Jail employs both male and female deputies and is an equal opportunity employer.

---

[2] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56, and are undisputed.

*Id.*, ¶ 6. Of the 169 total commissioned Jail deputies, 32 (just under 19%) are female. *Id.* Jail deputies are responsible for handling inmate booking and processing, visitation, transportation to court and other detention facilities, and providing security for both inmates and the facility. *Id.*

The supervision of inmates is an essential function and responsibility of the Jail. *Id.*, ¶ 7. The safety and security of inmates and Jail staff is primary among the many reasons why inmates must be supervised in Jail. *Id.* Jail showers are known areas with increased security risks in Jail. *Id.* Inmates may go to the shower to handle or transfer contraband or may start fights in the showers. *Id.* As such, it is important for Jail staff to have some supervisory access to shower areas. *Id.* Female deputies at the Jail may serve in the control tower or as rovers. *Id.* The duties associated with these positions may include the incidental viewing of nude male inmates. *Id.* However, such viewing would be infrequent and casual observations only and would be at a distance. *Id.*

The male showers at the Jail are situated below a control tower by a distance of at least 10 feet. *Id.*, ¶ 8. In order to observe an inmate showering for any significant period of time, a deputy would have to peer over the edge of the window to specifically view the nude body of a male inmate. *Id.* Control tower deputies are tasked with many duties, such as the observation of four inmate Pods simultaneously, and would not be able to sufficiently perform their jobs and observe an inmate shower for an extended amount of time. *Id.* One deputy is assigned to the control tower per shift. *Id.* The control towers have four pods to oversee. *Id.* Tower deputies are required to maintain an accurate and legible log for the tower which lists all events occurring on the shift in all four pods. *Id.* The tower deputy is not allowed to sleep, watch television, or engage in any activity that would cause them to be inattentive to their required duties. *Id.*

Inmates in non-restricted housing areas are permitted to shower at any time during their recreation period. *Id.*, ¶ 10. They may shower as often or as long as they wish. *Id.* Jail deputies do not enter the showers while inmates are showering, unless necessary for security-related reasons. *Id.*, ¶ 9.

Assistant Chief Deputy of the Detention Divisions for the Montgomery County Sheriff's Office, Douglas Tackett, is not aware of any deputy (male or female) inappropriately viewing inmates while showering, and it would not be possible for a control tower deputy to observe an inmate showering for any extended period of time and still perform the duties required of a control tower deputy. *Id.*, ¶¶ 1, 11. If it were brought to Assistant Chief Deputy Tackett's attention and shown that a deputy was inappropriately viewing inmates while showering at the Jail, that deputy would be subject to disciplinary action up to and including termination of his or her employment. *Id.*

At all times relevant to the instant action, the Jail had in place a grievance procedure by which inmates could express complaints with the conditions of their confinement. *Id.*, ¶ 12. An inmate may request an Inmate Grievance Form from any deputy. *Id.* After filling out the grievance, the inmate may give it to any deputy. *Id.* The shift supervisor on duty reviews the grievances and handles the grievance by responding or taking action himself or assigning the grievance to the responsible supervisor for action or response. *Id.* The supervisor indicates the response or action taken on the form, signs the form, and places the original in the inmate's Jail file and has a copy returned to the inmate. *Id.*

Plaintiff never filed a grievance related to the construction of the male showers at the Jail. *Id.*, ¶ 13.

## III. Analysis

### A. Local Rules 7.01(b) and 56.01(c) and (g)

Local Rule 7.01(b) states, in pertinent part:

> **b. Response.** Each party opposing a motion shall serve and file a response, memorandum, affidavits and other responsive material not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after the service of the motion, unless otherwise ordered by the Court. Failure to file a timely response shall indicate that there is no opposition to the motion.

Defendant filed the instant Motion on January 11, 2016. Docket No. 16. Plaintiff has failed to respond to Defendant's Motion.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> **c. Response to Statement of Facts.** Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by a citation to the record. ...
>
> . . .
>
> **g. Failure to Respond.** Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

Plaintiff has failed to respond to Defendant's Statement of Undisputed Material Facts or file his own Statement of Undisputed Material Facts. Pursuant to Local Rule 56.01(g), Plaintiff's failure to respond indicates "that the asserted facts are not disputed for the purposes of summary

judgment." Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Defendant is entitled to a judgment as a matter of law.

**B. Motion for Summary Judgment**

It would be inappropriate to grant Defendant's Motion solely on the ground that Plaintiff has failed to respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendant has met its burden under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.

1989).  In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party.  *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial.  If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273.  When this occurs, the moving party is entitled to summary judgment as a matter of law.  *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

**C.  42 U.S.C. § 1983**

**1.  Generally**

Plaintiff alleges violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983.  *See* Docket No. 1.  Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

### 2. **Eighth Amendment**

The Eighth Amendment provides that:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The United States Supreme Court has held that the constitutional prohibition of "cruel and unusual punishments" forbids punishments that are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976) (citations omitted).

In order to establish an Eighth Amendment claim, an inmate must satisfy a two-prong

9

test: (1) the deprivation alleged must be objectively serious; and (2) the official responsible for the deprivation must have exhibited deliberate indifference to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994).

**D. Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e**

A prisoner must exhaust all available administrative remedies before filing a claim under §1983 or any other federal law. 42 U.S.C. §1997e(a). *See also, e.g., White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997); *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998); *Wyatt v. Leonard*, 193 F.3d 876, 878 (6th Cir. 1999). The Prison Litigation Reform Act of 1995 provides in pertinent part as follows:

> (a) **Applicability of Administrative Remedies**. No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (emphasis original).

Additionally, the filing of an initial grievance is not sufficient to satisfy the requirements of § 1997e(a). Rather, the PLRA exhaustion of prison administrative remedies requires a prisoner to pursue his prison grievance through the final level of administrative appeal. *Hartsfield v. Vidor*, 199 F.3d 305, 306 (6th Cir. 1999). In *Hartsfield*, the Sixth Circuit explicitly stated:

> Even if Plaintiff did file an initial grievance against [defendants], he was required to continue to the next step in the grievance process . . . . We have previously held that an inmate cannot simply . . . abandon the process before the completion and claim that he has exhausted his remedies. . .

When a defendant shows that a plaintiff has not "exhausted all available state

administrative remedies," the only remaining question is whether Plaintiff's claims have been brought with respect to "prison conditions" as that term is used in 42 U.S.C. § 1997e(a).

The Sixth Circuit discussed the meaning of the term "prison conditions" as used in 42 U.S.C. § 1997e(a) in *Freeman v. Francis*, 196 F.3d 641 (6th Cir. 1999). In *Freeman*, Plaintiff inmate brought a lawsuit against prison officials claiming that they had used excessive force against him. The lower court had dismissed his complaint for failure to exhaust administrative remedies. On appeal, Plaintiff argued in part that he was not required to exhaust his administrative remedies because his excessive force claim did not involve a "prison condition" within the meaning of § 1997e(a). The *Freeman* Court stated in part as follows:

> The phrase "action . . . with respect to prison conditions" is not defined in § 1997e. Because the question is one of statutory construction, we must first look to the plain language of the statute. Defendants argue that the term "prison conditions" as used in 18 U.S.C. § 3626(g)(2), which was amended as part of the same legislation as § 1997e, does include claims such as excessive force because it expressly includes "effects of actions of government officials on the lives of confined persons" as well as "conditions of confinement" in defining "prison conditions." . . . It is generally recognized that when Congress uses the same language in two different places in the same statute, the words are usually read to mean the same thing in both places. . . .
>
> Moreover, reading the term "prison conditions" to include claims of excessive force finds support in the purpose and legislative history of the Act. The Act was passed to reduce frivolous prisoner lawsuits and to reduce the intervention of federal courts into the management of the nation's prison systems. A broad exhaustion requirement that includes excessive force claims effectuates this purpose and maximizes the benefits of requiring prisoners to use prison grievance procedures before coming to federal court. Prisons need to know about and address claims of excessive force as they would any other claim concerning prison life so that steps may be taken to stop problems immediately if they exist.

11

196 F.3d at 643-644 (footnote omitted).

The U. S. Supreme Court has also held that "§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *See Porter v. Nussle*, 534 U.S. 516, 520, 122 S.Ct. 983, 986 (2002). As the *Porter* Court stated:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. . . . In other instances, the internal review might "filter out some frivolous claims." . . . And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.
>
> . . .
>
> For the reasons stated, we hold that the PLRAs exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.

122 S.Ct. at 988, 992 (citations omitted, emphasis added).

### E. The Case at Bar

As an initial matter, under the reasoning of *Porter* and *Freeman*, Plaintiff's claims in the case at bar fall within the meaning of the term "prison conditions" as used in § 1997e(a). He is, therefore, required to exhaust his administrative remedies as set forth in the PLRA.

It is undisputed that, at all times relevant to the instant action, the Jail had in place a grievance procedure by which inmates could express complaints with the conditions of their confinement, and that Plaintiff never filed a grievance related to the construction of the male showers at the Jail. Tackett Aff., ¶¶ 12, 13. Because Plaintiff did not file a grievance related to

12

his sole remaining claim, Plaintiff has failed to exhaust his administrative remedies as required by the PLRA, and Defendant is entitled to a judgment as a matter of law.

Moreover, in order to hold Defendant Montgomery County, Tennessee, liable under § 1983, a plaintiff must plead allegations, *inter alia*, that an "official policy or custom was adopted by the official makers of policy with 'deliberate indifference' towards the constitutional rights of persons affected by the policy or custom." *City of Canton v. Harris*, 489 U.S. 378, 387-88, 109 S. Ct. 1197, 1204, 103 L. Ed. 2d 41 (1989). *See also Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978) (In order to find a governmental entity liable, Plaintiff must establish that (1) he/she suffered a deprivation of a constitutionally protected interest, and (2) the deprivation was caused by an official policy, custom, or usage of the local governmental entity.).

Plaintiff has failed to even allege the existence of any deficient Montgomery County policy, practice, or custom, much less allege that an official Montgomery County policy, practice, or custom caused him constitutional injury. Absent such allegations, Plaintiff cannot sustain his claim.

### IV. Conclusion

For the foregoing reasons, the undersigned recommends that Defendant's Motion for Summary Judgment (Docket No. 16) be GRANTED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any

response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

                                                            E. CLIFTON KNOWLES
                                                            United States Magistrate Judge